UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRUSTEES OF THE OPERATING
ENGINEERS' LOCAL 324 PENSION
AND FRINGE BENEFIT FUNDS,

                    Plaintiffs,                    No. 14-cv-14766

vs.                                                Hon. Gerald E. Rosen

GLENCORP, INC., a Michigan corporation,
and RONALD A. MARINO, individually,

                    Defendants.
_____/

OPINION AND ORDER REGARDING
CROSS-MOTIONS FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on April 11, 2016

PRESENT:  Honorable Gerald E. Rosen
          United States District Judge

## I. INTRODUCTION

This is an ERISA contribution action.  In their two-count Complaint for breach of

contract and breach of fiduciary duty, the Trustees of the Operating Engineers' Local 324

Pension and Benefit Funds seek to recover from Defendants Glencorp, Inc. and Ronald

Marino delinquent contributions for pension and fringe benefits owing to the funds on

behalf of Glencorp's covered employees.  After auditing the Defendant corporation's

1

books and records, Plaintiffs determined that the delinquency totals in excess of $680,000.00.

The action is presently before the Court on the parties' cross-motions for summary judgment. Responses and reply briefs have been filed. Having reviewed and considered the parties' motions and briefs, and the entire record of this matter, the Court has concluded that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Defendant Glencorp, Inc., a Michigan corporation, is an earth-moving contractor engaged in the business of moving dirt and heavy cuts, digging retention ponds, and digging roads for developers in subdivisions. Glencorp operates out of offices located on Ryan Road in Shelby Township, Michigan. Defendant Ronald Marino is the sole owner and sole officer of Glencorp. [Marino Dep., p. 6-7, 13]. Marino also owns Ryan Holding Company which owns the property on which Glencorp's offices are situated. *Id*., p. 8.

Marino testified in his deposition that he is "the boss" at Glencorp, and he makes all final decisions for the company, including deciding which bills are going to be paid and which bills are not going to be paid, when that decision has to be made. *Id*. at p. 13.

Glencorp is party to a Short Form Agreement with the International Union of

2

Operating Engineers, Local 324.  [*See* Plaintiff's Ex. A].  Ronald Marino signed the

Agreement as president of Glencorp.  *Id.*  Pursuant to the Short Form Agreement,

Glencorp agreed "to abide by the Wages, Rates, Fringes, Fringe Benefits, and all other

terms, conditions and provisions in the most current Collective Bargaining Agreements"

between the Union and a number of entities and associations, including "The Labor

Relations Division of the Michigan Infrastructure and Transportation Association

(MITA) Road Agreement" (the "Road Agreement") and "The Michigan Infrastructure

and Transportation (MITA) Underground Agreement" (the "Underground Agreement").

*Id.*  Although Ronald Marino testified that Glencorp performs work covered under both

the Road and the Underground Agreements, its contributions to the Plaintiff Funds have

always been pursuant to the Underground Agreement.  [Marino Dep., pp. 31-32.]

In pertinent part, the MITA Underground Agreement provides:

### ARTICLE II
\* \* \*
### Section 3.  COVERAGE OF AGREEMENT

This Agreement shall govern all underground construction work
which any Contractor performs in the State of Michigan and which comes
under the jurisdiction of the Union.

Underground construction work shall be construed to mean any
work which requires the excavation of earth, including industrial,
commercial and residential building site excavation and preparation, land
balancing, grading, paving, sewers, utilities and improvements, and also
including but not limited, to tunnel, underground piping, retention,
oxidation and flocculation facilities, conduits, general excavation, landfills
and steel sheeting for underground construction. . . .

3

[Plaintiff's Ex. B, Pg ID 554.]

The Plaintiff Funds are ERISA pension and fringe benefit funds established pursuant to the Operating Engineers' Collective Bargaining Agreements with the various entities and associations, including the Michigan Infrastructure and Transportation Association Underground Agreement.  Pursuant to its obligations under the Agreement, in addition to paying employee wages, Glencorp was required to pay to the Plaintiff Funds amounts for certain fringe benefits, including pension and health care benefits, on behalf of each of its employees doing work covered by the CBA.  *See id.,* Art. IV, § 9; Art. V, Art. VI.

Plaintiffs assert that Glencorp has failed to comply with its contractual obligations.  Based on an audit for the period of September 2007 through September 2014, Plaintiffs seek contributions from Glencorp for delinquent pension and benefit contributions totaling $689,272.42.[1] In addition, based on the self-reporting system in place, Plaintiffs claim that Defendants also owe them $125,834.31 in fringe benefit contributions for November 2014 through January 2015.[2]  Plaintiffs further seek

---

[1]  The audit actually showed a delinquency of $1,374,556.75.  However, based on their post-audit investigation and discovery in this case, Plaintiffs were able to verify that the work of some of the employees included in the original audit was not work covered under the CBA.  Accordingly, the audit was revised and the balance due and owing to the Plaintiff Funds has been reduced to $689,272.42.  *See* Affidavit of Wayne B. Kless, Jr. of Stefansky, Holloway & Nichols, Inc., Plaintiff's Ex. F.  *See also* Revised Audit, Defendants' Ex. 11.

[2]  No audit, however, has yet been done to verify the delinquency of contributions since September 2014.

4

$13,997.91 in late payment liquidated damages.

Defendants do not dispute that Glencorp is delinquent in its payments to the Plaintiff Funds; they do, however, dispute the amount of that delinquency. [*See* Marino Dep., pp. 22, 33.] Defendants further dispute Defendant Marino's liability on Count II of Plaintiff's Complaint for breach of fiduciary duty.

## III. DISCUSSION

### A. APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a

5

light most favorable to the nonmoving party.  *Pack v. Damon Corp.,* 434 F.3d 810, 813

(6th Cir. 2006).  Yet, the nonmoving party may not rely on mere allegations or denials,

but must "cit[e] to particular parts of materials in the record" as establishing that one or

more material facts are "genuinely disputed."  Fed. R. Civ. P. 56(c)(1).  Moreover, any

supporting or opposing affidavits or declarations "must be made on personal knowledge,

set out facts that would be admissible in evidence, and show that the affiant or declarant

is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally, "the mere

existence of a scintilla of evidence that supports the nonmoving party's claims is

insufficient to defeat summary judgment."  *Pack,* 434 F.3d at 814 (alteration, internal

quotation marks, and citation omitted).  The Court will apply the foregoing standards in

deciding the parties' cross-motions for summary judgment in this case.

B.    GLENCORP IS LIABLE FOR THE UNPAID FUND CONTRIBUTIONS

As indicated above, Plaintiffs seek payment of $815,106.73 in delinquent Fund

contributions for the periods of September 2007 through September 2014, and November

2014 through January 2015, plus $13,997.91 in late payment liquidated damages.

Section 515 of ERISA, 29 U.S.C. § 1145 states:

Every employer who is obligated to make contributions to a multi-employer
plan under the terms of the plan or under the terms of a collective
bargaining agreement shall, to the extent not inconsistent with law, make
such contributions in accordance with the terms and conditions of such
plan or agreement.

29 U.S.C. § 1145.

6

There is no dispute that the CBA here requires employer contributions.

29 U.S.C. § 1132(g)(2), provides:

In any action under this subchapter by a fiduciary, for or on behalf of a plan, to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --

(A)    the unpaid contributions;
(B)    interest on the unpaid contributions;
(C)    an amount equal to the greater of -
    (i)    unpaid contributions
    or
    (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
(D)    reasonable attorneys' fees and costs of the action to be paid by the defendant, and
(E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [Internal Revenue Code section 6621].

29 U.S.C. § 1132(g)(2).

The Sixth Circuit has held that the language of Section 1132(g)(2) is mandatory upon a judgment in favor of the plan. *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir.), *cert. denied*, 502 U.S. 982 (1991).

As indicated above, Defendants do not dispute that Glencorp is delinquent in its contributions to the Funds. They do, however, dispute the amount of the delinquency

7

claimed by Plaintiffs.  Specifically, Defendants dispute their liability for any

contributions for Glencorp's non-union employees.  They contend that the collective

bargaining agreement requires Fund contributions for union members only.

The construction of collective bargaining agreements and employee benefit plans

is a question of law for the court to decide. *Teamsters' Local 348 Health and Welfare*

*Fund v. Kohn Beverage Co.*, 749 F.2d 315, 317 (6th Cir.1984), *cert. denied*, 471 U.S.

1017 (1985). "As a matter of law, collective bargaining agreements may require

employers to contribute to funds for all employees, not just employees who are members

of the union." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d

965, 969-70 (6th Cir.1998).

Plaintiffs interpret the CBA here to require Glencorp to contribute to the employee

pension and benefit funds based on the nature of the employee's work, not the

employee's union membership. Defendants argue that contributions are dependent on

union membership.  In their Response to Plaintiffs' Motion for Summary Judgment,

Defendants identify seven non-union employees -- Conrad Fiddler, Matthew Simmons,

Jon Fons, Nicholas Rahn, Catarino Bustos, Robert Shekowski, Sr., and Michael

Rideout -- for whom Defendants claim they are not obligated to make any Fund

contributions.[3]

---

[3]  In their Revised Audit, Plaintiffs no longer contend that Defendants owe
contributions for Conrad Fiddler or Matthew Simmons.  Further Plaintiffs have
determined that only 50% of the time Catarino Bustos and Michael Rideout spent on the

8

Articles V and VI of the Underground Agreement require Glencorp to contribute to the pension and benefit funds for "each employee covered by this Agreement."  *See* Underground Agreement, Plaintiff's Ex. B, Art. V; Art. VI, §§ 1, 2(a), 3(a), 4(b), 6(a), and Art. XI, § 4.  "Employee" is defined in the CBA as including "Operating Engineers, Mechanics, Oilers and Apprentice Engineers employed by the Contractors coming within the jurisdiction of the Union." *Id.* Art. I, § 3. Article IV, § 1, titled, "Classifications," further states

> All employees working under this Agreement shall be paid in accordance with §§ 5, 6, 7, and 9 of this Article, and classified in accordance with Sections 10, 11, 12, 13 and 14 of this Article and no other classifications of labor of any kind will be recognized.

[Plaintiffs' Ex. B, Art. IV, §1.]

Sections 10 through 13 of Article IV set forth the different classifications of equipment operated by the contractors' employees, designated by classes, *i.e.*, "Class I," "Class II," "Class III," and "Class IV."  Article IV, § 5 specifies the wage rates and benefit contribution amounts for employees working in each Class.  *See* Article IV, § 5(a) ("The wage rates and benefits upon the effective dates shown herein shall apply on all work covered under this Agreement. . . .")  Nowhere is the term "employee" defined in the CBA other than by classification.

---

job during the relevant time period was devoted to work covered under the CBA, and only 10% of Jon Fons's and Nicholas Rahn's time was for covered work.  *See* Affidavit of Wayne B. Kless, Jr., ¶¶ 12-13, Plaintiffs' Ex. F.  The Revised Audit reflects these adjustments.  *See* Defendants' Ex. 11.

9

The Sixth Circuit has held that the language "each employee covered by this Agreement" requires employers to determine whether to make fund contributions based on the type of work performed, *not* union membership. *See Teamsters' Local 348 v. Kohn Beverage, supra*. *See also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 698 F.2d 802, 804-05 (6th Cir. 1983), *rev'd on other grounds*, 472 U.S. 559 (1985) (construing definition of employees by job classification to require coverage by the CBA of all employees within those classifications, regardless of union membership);*Central States Southeast and Southwest Areas Pension Fund v. Capitol City Lumber Co.*, 627 F. Supp. 974, 978-81 (W.D. Mich. 1985); *Board of Trustees of Ohio Laborers Fringe Benefit Programs v. Blaze Construction Co.,* 2002 WL 31951267 at *4 (S.D. Ohio 2002) ("The definition of employee by reference to job classification suggests coverage by the collective bargaining agreement of all employees within those classifications, regardless of union membership"); *Plumbers, Pipefitters, and Apprentices Local Union No. 12 Pension and Benefit Plans v. Mauro's Plumbing, Heating and Fire Suppression, Inc.*, 83 F. Supp. 2d 344, 354 (N.D.N.Y. 2000) (finding CBA required contributions on behalf of all employees performing covered work and not just union members where although the CBA did not define "employee", it referred to employees by job classifications).  Further, "[t]he absence of language distinguishing union and non-union employees indicates that the agreement covers all employees." *Kohn*, 749 F.2d at 318 (citations omitted).

Additionally, construing the language in Articles V and VI as requiring employers to make contributions to the pension and benefit funds for all employees performing work covered by the agreement and not just those employees who are union members is consistent with the NLRA which makes it illegal for an employer to discriminate against union and non-union employees in the award of fringe benefits. *See* Section 8(a)(3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(3)[4]; *see also Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 624 (3d Cir.1984) ("The absence of any distinction in the agreements between union and non-union members can be easily explained:  the law does not permit such a distinction.")

Based upon the foregoing, the Court concludes that Defendants are obligated to make contributions to the Plaintiff Funds for *all* employees, including non-union employees, who performed work covered under the CBA during the relevant time period.

## C.    DEFENDANT RONALD MARINO IS LIABLE FOR BREACH OF HIS ERISA FIDUCIARY DUTIES

Under ERISA,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such

---

[4]  Section 8(a)(3) of the National Labor Relations Act provides as follows:

It shall be an unfair labor practice for an employer -- by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

29 U.S.C. § 158(a)(3).

plan or *exercises any authority or control respecting management or disposition of its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

29 U.S.C. § 1109(a) imposes personal liability on ERISA plan fiduciaries:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a).

As to what constitutes "plan assets", the Department of Labor regulations and federal case law establish that unpaid fringe benefit contributions are vested plan assets when due.

29 C.F.R. § 2510.3-102(a) provides:

**Definition of "plan assets" – participant contributions.** (a) General rule. For purposes of [ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

*Id.*

Although the Sixth Circuit has not addressed the issue of when unpaid benefit contributions become plan assets, this Court and other judges in this district have

12

repeatedly held that pension and benefit fund contributions are plan assets as soon as they are *due and owing. See, e.g., Plumbers Local 98 Defined Benefit Pension Fund v. M&P Master Plumbers of Michigan, Inc.*, 608 F. Supp. 2d 873, 876-80 (E.D. Mich. 2009) (Rosen, J.); *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc*., 352 F. Supp. 2d 794, 805 (E.D. Mich. 2004) (Zatkoff, J.); *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment, LLC*, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004) (Edmunds, J.); *Trustees of Iron Workers Local 25 Pension Fund v. Municipal Indus. Storage, Inc.*, 2011 WL 1515047 at *3 (E.D. Mich. 2011) (Borman, J.); *Iron Workers Local 25 Pension  & Ben. Funds v. Steel Enterprises, Inc.*, 2009 WL 3645633, **4-5 (E.D. Mich. 2009) (Rosen, J); *cf. Trustees of Mich. Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 371 (E.D. Mich. 2005) (Cohn, J.); *see also United States v. Grizzle*, 933 F.2d 943, 946–48 (11th Cir. 1991), *cert. denied*, 502 U.S. 897(1991) (money withheld for deposit into vacation fund was a plan asset); *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2nd Cir. 1997) (money withheld from employees' paychecks for deposit into pension fund was a plan asset); *Plumbers Local 98 Defined Benefit Funds v. Controlled Water, Inc.*, 2006 WL 2708544 at *4  (E.D Mich. 2006).[5]  These cases universally treat delinquent payments to

---

[5]  Although the Sixth Circuit was presented with an opportunity to address the question of whether unpaid contributions are "plan assets" in *Sheet Metal Local 98 Pension Fund v. Airtab, Inc.*, 482 F. App'x 67 (6th Cir. 2012) (unpublished decision), it declined to do so, holding instead that the individual defendants in that case could not be held personally liable for non-payment of the contributions because they were not

13

ERISA funds as de facto mismanagement of plan assets.

Furthermore, the Operating Engineers' CBA and the Funds' trust documents, by their terms, set out a clear obligation to make contributions on a monthly basis and to treat these unpaid contributions as inalienable plan assets. The CBA requires that the Contractor make contributions to the various funds by the 15th day of each month for work performed in the immediately preceding month. *See* CBA, Plaintiffs' Ex. B, Art. IV, § 9.

In relevant part, the trust documents provide:

**Employer Contributions or Contributions** means the payments made or required to be made to the Trust Fund by a Contributing Employer. Contributions become vested Plan assets at the time they become due and

--------------------------------

fiduciaries under ERISA. As an unpublished decision, *Airtab* is not binding precedent, and even if it were, the case is factually distinguishable from this case.

The *Airtab* court determined that the mere "refusal to pay the funds as required under the CBA does not rise to the level of exercising discretionary control or authority such that fiduciary status attaches." 482 F. App'x at 69. Because the plaintiffs "point[ed] to no other actions of the [individual defendants] other than their refusal to pay funds as constituting a breach of fiduciary duty," the court concluded that the breach of fiduciary claim was merely a restatement of the funds' breach of contract claim against the corporate defendant. *Id.* In so ruling, however, the court suggested that a different ruling would result if the court were presented with different facts:

This is not a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries as in *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).

*Airtab*, 482 F. App'x at 69-70.

It is precisely this *LoPresti*-type of situation that is presented in this case. *See* discussion, *infra*.

14

owing to the Fund.  An Employer shall have no right, title, or interest in the Contributions owing to or made to the Fund.  Title to all Contributions paid into and/or due and owing to the Fund shall be vested in and remain exclusively in the Trustees of the Fund.

[*See* Plaintiffs Ex. T, Pg ID Nos. 843, 845, 849, 850].

In numerous cases involving delinquent contributions to multiemployer plans the courts have found such contractual obligations controlling and determinative of whether the delinquent contributions were plan assets.  For example, in *Galagay v. Gangloff*, 677 F. Supp. 295 (M.D. Pa. 1987), a multiemployer plan brought an action against various enterprises and individuals to collect delinquent contributions.  The court held that the multiemployer plan properly stated a cause of action against the enterprises for violation of fiduciary duties under ERISA.  The court cited 29 U.S.C. § 1002(21)(A)(i) for the proposition that a person becomes a fiduciary when he "exercises any authority or control respecting management or disposition of its assets."  *Id.* at 300.  Further the wage agreement which obligated the defendants to make contributions to the funds stated that "[t]itle to all monies paid into and/or due and owing to said fund shall be vested in and remain exclusively in the trustees of the fund."  *Id.* at 301.  Based upon this contractual language, the court accepted the plan's reasoning that the employer contributions became vested assets of the fund once they became "due and owing," as opposed to when actually paid.  *Id.   See also*, *In re: Consolidated Welfare Fund ERISA Litigation*, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993) (same); *NYSA-ILA Medical and Clinical Services Fund v. Catucci*, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999) ("An agreement that unpaid debts to an

15

ERISA fund become assets means that when a corporation is delinquent in its contributions, the fund has sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets.")

Similarly, in *United States v. Panepinto*, 818 F. Supp. 48 (E.D.N.Y. 1993), *aff'd*, 28 F.3d 103 (2d Cir. 1994), the collective bargaining agreement called for employer payments to multiemployer funds.  The CBA further provided,

> Neither the Associations as such nor any Employer shall have any legal or equitable right, title or interest in or to any sum paid by or due from the Employer. . . and of said benefit funds.

*Id.* at 52.  The court found this language sufficient to make the amounts due "assets" of the funds, explaining, "If the employer has no legal interest in any amounts he received that are 'due to' the funds, then plainly the agreement makes these amounts "assets" of the funds."  *Id.*

The court then concluded:

> Once the Defendants knowingly failed to make required contributions to the Funds, they exercised control respecting disposition of the assets of an employer welfare benefit plan.  They held those funds as fiduciaries, and under 29 U.S.C. § 1104(a)(1), they were required to discharge their duty "solely in the interest of the participants and beneficiaries of the Funds."

*Id.*

Defendant Marino does not vigorously dispute that the delinquent contributions are vested plan assets.  Rather, he argues that because he signed the Short Form Agreement with the International Union of Operating Engineers, Local 324, as

16

"President" of Glencorp, Inc., and because nowhere in that Agreement is he identified as a "fiduciary," he cannot be held personally liable to the Plaintiff Funds as an ERISA fiduciary for the delinquent contributions.

The Sixth Circuit has made clear, however, that "anyone who exercises authority over an employee benefit plan can properly be held an ERISA fiduciary because that term was intended to be interpreted broadly by Congress." *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988) (citing *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984). As indicated in ERISA's legislative history, the definition of fiduciary "'includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.'" *Donovan* at 308 (quoting House Conf. Rep. No. 93-1280, 93rd Cong., 1974 U.S. Code and Admin. News 4639, 5038, 5103). In light of the foregoing, the Sixth Circuit has consistently adhered to the premise that it is the "functional terms of control and authority" not the formal title that is determinative for purposes of ERISA fiduciary status. *See, e.g., Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir.2001); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir.2000).

Ronald Marino testified in this case that he is the sole owner and sole officer of Glencorp. [Marino Dep., p. 6-7, 13] He is "the boss" at Glencorp, and he makes all final decisions for the company, including deciding which bills are going to be paid and which bills are not going to be paid, when that decision has to be made. *Id*. at p. 13. These include decisions with regard to contributions to the Plaintiff Funds. *Id.* Marino further

17

admitted that he is delinquent in payment of Glencorp's contributions to the Plaintiff Funds, yet his company continues to do business and he is paying other creditors, one of whom is Marino, himself, as owner of Ryan Holding, to whom Glencorp pays rent. *Id.* p. 8. Further, tax records show that while Glencorp's benefit contributions remained due and owing, Marino "borrowed" large sums of money from the company and paid himself back a large loan in the amount of $321,772.00. *See* Plaintiffs' Ex. S. These records also show the ongoing payment of corporate operating expenses during the period of Glencorp's delinquency with respect to Fund contributions. *Id.*

Courts have routinely held that this type of control demonstrates that the officer-defendant is an ERISA fiduciary and can be held personally liable for ERISA contributions. *See e.g., Plumbers Local 98 Defined Benefit Pension Fund v. M&P Master Plumbers of Michigan, Inc.*, 608 F. Supp. 2d at 880 ("[Defendant Panknin] also admitted that he had the final say in all decisions regarding M & P, including whether fringe benefit contributions were to be paid."); *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d at 806 ("[G]iven Defendant McGuire's admission that he was responsible for the day-to-day operation of Defendant McGuire Steel, including the decision of whether or not to pay ERISA benefit contributions, no reasonable jury could find that he did not act in a fiduciary capacity."); *Trustees of the Iron Workers Local No. 25 Pension Fund v. Municipal & Industrial Storage, Inc.*, 2011 WL 1515047 at *83-4 ("[I]t is clear that Lettinga exercised control over Municipal and

therefore had discretion over the unpaid contributions. [Lettinga] admitted that he runs the day-to-day operations of the company. Accordingly, he decides what bills to pay, including whether or not to make the fringe benefit contributions required under the CBA.") *See also United States v. Panepinto*, *supra,* 818 F. Supp. at 52 (holding that defendants' failure to make required contributions constituted exercise of control over the disposition of employee welfare benefit plan assets under ERISA).

The foregoing demonstrates that Marino is a fiduciary under ERISA and, given the foregoing analysis, it is clear that fund assets, in the form of unpaid contributions, were either diverted for other purposes or simply not paid, as a result of Marino's personal, discretionary control and management of these assets.

As indicated above, under ERISA, an employer is a fiduciary with respect to a welfare-benefit fund to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). 29 U.S.C. § 1109(a) imposes personal liability on fiduciaries as follows:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

Finally, a fiduciary "must discharge his duties with respect to a plan solely in the interest

of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

When a person breaches that standard of care, he incurs personal liability. 29 U.S.C. § 1109(a).

As set forth above, from the moment Marino knowingly failed to make required contributions to the Funds for his workers, he exercised control with respect to the disposition of plan assets, held those funds as a fiduciary, and under 29 U.S.C. § 1104(a)(1), was required to discharge his duty "*solely* in the interest of the participants and beneficiaries of the Funds." 29 U.S.C. § 1104(a)(1)(A) (emphasis added). When Marino elected to pay other creditors rather than devoting these company assets to employee benefit contributions he breached his fiduciary duties under ERISA. For all of the foregoing reasons, the Court concludes that Defendant Marino is personally liable for the unpaid contributions due and owing to the Plaintiff Funds.

D.   DEFENDANTS' STATUTE OF LIMITATIONS AND LACHES ARGUMENTS

Defendants contend that they are entitled to entry of summary judgment in their favor based on their arguments that the statute of limitations and the doctrine of laches bar Plaintiffs' claims against Glencorp and Marino.

1.   A Six-Year Statute of Limitations Applies in ERISA Collection Actions

ERISA does not provide a statute of limitations for ERISA collection actions. Therefore, "the Sixth Circuit, like other circuits, applies the limitations period for the state cause of action that is most analogous to the ERISA claim at issue." *Operating*

20

*Engineers Local 324 Health Care Plan v. G&W Contruction Co.,* 783 F.3d 1045, 1054

(6th Cir. 2015) (citations omitted).  In ERISA collection cases, the Sixth Circuit applies

the forum state's general limitations period for contract actions.  *Id.*  The parties here

agree that Michigan's six-year statute of limitations for contract actions applies to

Plaintiffs' claim in this case.

  "Although the statute of limitations may be borrowed from state law, it is federal

law that determines the date on which a statute of limitations begins to run."  *Michigan*

*United Food & Commercial Workers Unions & Drug & Mercantile Employees Joint*

*Health & Welfare Fund v. The Muir Co.*, 992 F.2d 594, 598 (6th Cir. 1993) (citing

*Holmberg v. Arbrecht*, 327 U.S. 492, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946)).  "Under

federal law, as under most laws, the limitations clock starts ticking 'when the claimant

discovers, or in the exercise of reasonable diligence should have discovered, the acts

constituting the alleged violation.'"  *Winnett v. Caterpillar, Inc.,* 609 F.3d 404, 408 (6th

Cir. 2010) (quoting *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1000 (6th Cir. 1994).

Because the statute of limitations is an affirmative defense, the burden is on Defendants

to show that the statute of limitations has run.  *Campbell v. Grand Trunk Western R. Co.*

238 F.3d 772, 775 (6th Cir. 2005).  Defendants have not met this burden.

  As indicated, a discovery rule applies in determining whether the statute of

limitations has run.  Defendants here point to certain emails provided to them during

discovery in this case as evidence that Plaintiffs discovered, or should have discovered,

Defendants' violation of their contractual obligations to pay contributions for all Glencorp employees doing work covered under the CBA long before the audit in this case was completed. However, with respect to the 2012 internal union emails that Defendants point to [Defendants' Ex. 9], these emails only show that the parties were working out late payment issues; nothing in these emails indicates that Plaintiffs were, or should have been, on notice then that Glencorp was not paying contributions for all workers performing work covered under the CBA.

As for the remaining emails [Defendants' Ex. 5-8; 10], at best these June-September 2014 emails show that Plaintiffs were diligently attempting to ascertain whether the employees on the 2012 list Defendants had provided included all of the employees doing work covered under the CBA. Further, the record of this case shows that Defendants attempted to conceal from Plaintiffs evidence that would establish which employees were performing covered work. Defendant Marino repeatedly testified that there were no records that would indicate what the employees did on a day to day basis. [*See* Marino Dep., pp. 19, 20, 38, 44-47, 49, 51, 69.] Hence, on-site inspections were needed. But, when Union and Fund investigators visited Glencorp job sites in an attempt to ascertain the employees doing covered work, their attempts were thwarted: Employees like Jeffrey MacKenzie, Sr. were told to tell the union investigators who came to a job site that they worked for a different company. *See* MacKenzie, Sr. Aff., Plaintiffs' Ex. G ¶ 12. Other employees were told to "get off the equipment and run into the field" if the

22

union showed up at the job site. *See* Robert Shekoski, Sr. Dep., Plaintiffs' Ex. I, p. 14; *see also* Daniel Russ Dep., Plaintiffs' Ex. J, p. 18.

The final piece of "evidence" that Defendants point to as purportedly demonstrating that Plaintiffs' discovered or should have discovered the basis of their claim earlier is evidence that Plaintiffs had previously sued Defendants to collect delinquent fund contributions. Defendants cite *Operating Engineers Local 324 Health Care Plan v. Glencorp, Inc.*, 07-cv-12912-SFC-SDP. However, the mere citation to this case provides the Court with nothing suggesting that Plaintiffs should have known when they filed that case that Glencorp's listed employees were not its only employees doing work covered under the CBA. As the party bearing the burden of proof on this issue, Defendants' "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for Defendants." *Calderone*, 799 F.2d at 259.

Moreover, even a cursory reading of the Amended Complaint in the 2007 case shows that the issue there was whether two other entities purportedly owned by Ronald Marino (which are not parties in this case) -- MCC Mecosta LLC and MCC Holdings LLC -- were successors or subsidiaries or alter egos of Glencorp, and, as such, might be liable for fund contributions. It was the records of those two entities from 2006 through 2007 which Plaintiffs sought to audit in 2007. However, there is no indication that the audit was ever completed. The docket does not reveal any extensive litigation in the 2007 case and the case was ultimately dismissed pursuant to a stipulated order. *See* 07-

12912, Dkt. # 19.[6]  Without more, the Court cannot say that Plaintiffs should have discovered the facts upon which this action is predicated by virtue of the filing of the previous case in 2007.

2.    A Six-Year Statute of Limitations Also Applies to Plaintiffs' Claim Against Defendant Marino for Breach of His Fiduciary Duties

29 U.S.C. § 1113 sets forth the statute of limitations for claims of breach of fiduciary duties:

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 U.S.C. § 1101, *et seq.*], or with respect to a violation of this part, after the earlier of:
>
> (1)    six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2)    three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be

---

[6]  The Court takes this opportunity to remind counsel of their obligation to bring possible "companion cases" to the court's attention by responding to the "companion case/related case" questions on the civil cover sheet or in the electronic filing system. *See* Eastern District of Michigan Local Rule 83.11(b)(7)(C). The Court notes that there have been no less than three cases prior to this case filed by Local 324's Pension and Benefit Funds against Glencorp, Inc. in the Eastern District of Michigan:  99-70709 (Taylor, J.); 04-74334 (O'Meara, J.); 07-12912 (Cox, J.).  Yet, none of these prior cases was identified as a possible companion case or related case when this case was filed, and none of the prior cases was thereafter brought to the court's attention until Defendants mentioned the 2007 case in their Brief in Support of their Motion for Summary Judgment.  Counsel are hereby put on notice that sanctions for violation of the local rules may be imposed for any future failure to identify possible companion/related cases.

> commenced not later than six years after the date of discovery of such
> breach or violation.

29 U.S.C. § 1113.

"The fraud or concealment provision . . . prescribes a separate statute of limitations of six years from the date of discovery." *Francis v. The Blakie Group,* 372 F. Supp. 2d 741, 749 (S.D.N.Y. 2005), *aff'd*, 177 F. App'x 121 (2d Cir. 2006) (quoting *Caputo v. Pfizer, Inc*., 267 F.3d 181, 189 (2d Cir.2001)). The six-year term begins on the date of the plaintiff's discovery of the allegedly concealed facts. *Id.*

As discussed above, the concealed facts were not discovered by Plaintiffs until after they completed their on-site investigations in June-September 2014. This case was timely filed, well-within six years of the date of discovery of the concealed facts.

3.    Laches Does Not Apply

In *Operating Engineers Local 324 Health Care Plan v. G&W Construction Co., supra*, the Sixth Circuit held that laches cannot be invoked to bar an action to collect unpaid monetary contributions owed to an ERISA fund when the suit is brought within the applicable period of limitations.  783 F.3d at 1055.  As discussed above, this case was brought within the applicable period of limitations, therefore, the doctrine of laches is inapplicable as a matter of law.

<u>CONCLUSION</u>

For all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment **[Dkt. # 23]** is GRANTED and Defendants' Motion for Summary Judgment **[Dkt. # 21]** is DENIED.


s/Gerald E. Rosen_____
United States District Judge

Dated:  April 11, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 11, 2016, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135

26